**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 26-27842-CV-WILLIAMS**

HOFFMAN GONZALEZ RODRIGUEZ,

Petitioner,

v.

WARDEN, KROME NORTH SERVICE PROCESSING CENTER, *et al.*,

Respondents.
_______________________________________/

**ORDER**

**THIS MATTER** is before the Court on the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("***Petition***") filed by Petitioner Hoffman Gonzalez Rodriguez ("***Petitioner***") (DE 1.) Petitioner challenges his continued prolonged detention by immigration officials. (*Id.* at 3, 6–9); *see also* (DE 1-1.) As relief, Petitioner seeks an Order from the Court requiring immigration officials to release him from custody. (*Id.* at 10) *see also* (DE 1-1 at 13.) For the reasons set forth below, the Petition (DE 1) is **GRANTED.**

## I. FACTUAL BACKGROUND

Petitioner is a native and citizen of Cuba who was paroled into the United States on October 14, 1997. (DE 7 at 2 citing (DE 7-1, Ex. A; DE 7-2, Ex. B at 2 ¶ 6).) On March 30, 2002, Petitioner adjusted his status to that of a lawful permanent resident pursuant to the Cuban Adjustment Act. (*Id.* at 2 citing (DE 7-1, Ex. A; DE 7-2, Ex. B at ¶ 7).)

In December 2016, Petitioner was convicted in Florida state court of felony battery and sentenced to a term of 22 months in prison with a withhold of adjudication. (*Id.* citing DE 7-3, Ex. C; DE 7-2, Ex. B).)

On October 11, 2017, Petitioner was served with a Notice to Appear ("***NTA***") served charging Petitioner with removability under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("***INA***"), as an alien who at any time after admission was convicted of an aggravated felony. (*Id.* at 2 citing (DE 7-4, Ex. D).)

On November 15, 2017, following removal proceedings, an immigration judge ("***IJ***") entered an Order finding Petitioner removable and ordered him removed to Cuba. (*Id.* at 2 citing (DE 7-5, Ex. E at 1–2).) After the Parties appeared to waive their right to appeal, the IJ order become administratively final on that date.[1] (DE 7 at 2 citing (DE 7-5, Ex. E at 1).)

On October 21, 2025, after encountering Petitioner during a vehicular traffic stop, ICE served Petitioner with a warrant of removal/deportation. (*Id.* at 3 citing (DE 7-1, Ex. A; DE 7-7, Ex. G; DE 7-2, Ex. B; DE 7-8, Ex. H; DE 7-10, Ex. J).)

On May 2, 2026, Petitioner was taken into immigration custody, granted an informal interview, and then served with a notice of removal notifying him of ICE's intent to remove him to Mexico. (*Id.* at 5 citing (DE 10-10, Ex. J).)

In June of 2026 and in September of 2026, Petitioner filed with the Court two separate § 2241 petitions, nos. 1:26-cv-23837-KMW and 1:26-cv-2606-DPG challenging his ongoing immigration detention following the entry of a final order of removal. (Id. at 3.) Both petitions were dismissed as premature. (*Id.* at 3–4).

On September 17, 2026, a notice of alien of file custody review, warnings for failure to depart, and a second notice of removal was filed by ICE notifying Petitioner of their

[1] *See also* EOIR Automated Case Information System on-line at https://acis.eoir.justice.gov/en/caseInformation.

intent to remove him to Mexico. (*Id.* at 4 citing (DE 7-14, Ex. N, DE 7-15, Ex. O; DE 7-16, Ex. P).)

Petitioner has remained in immigration custody since May 2, 2206. (DE 7 at 3) *see also* (DE 1.) Approximately six months later, on November 4, 2026, Petitioner filed the Petition before the Court seeking habeas relief, arguing that his continued prolonged detention is unlawful. (DE 1).

## II. LEGAL STANDARD

District courts have the authority to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he or she is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner claims his prolonged detention is unlawful. (DE 1). Petitioner argues that his removal is not reasonably foreseeable as Cuba did not accept his repatriation and there is no immigration agreement between Mexico and the United States. (DE 1 at 3, 7–10.) Moreover, his removal to Mexico, contrary to the IJ's Order that he be removed to Cuba, is unconstitutional. (*Id.*) Respondent argues that Petitioner is not entitled to immediate release because Mexico routinely accepts Cuban nationals with criminal backgrounds or removal orders without a need for travel documents or Petitioner's consent. (DE 7 at 7.) The Court disagrees.

The Parties do not dispute that the six-month presumptively reasonable period under *Zadvydas* has expired and Cuba has refused to accept his repatriation, therefore, his removal to Cuba, as ordered by the IJ, is unlikely. Here, as in other similarly situated Petitioners, the Government has not demonstrated there is a valid agreement between the United States and Mexico regarding repatriation of Cuban nationals, much less that Mexico has agreed to receive the Petitioner. Further, Respondent has not provided individualized travel documents or other documentation showing that there is an individualized travel plan in place for Petitioner. The Court finds unpersuasive the Respondent's argument that the Mexican government routinely accepts Cuban nationals with criminal backgrounds and final orders of removal without the need for travel documents. No documentation from Mexico evidencing this agreement has been provided here.

It is well settled that, after entry of a final removal order against a noncitizen, the Government must secure the noncitizen's removal during a ninety-day removal period. *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (quoting 8 U.S.C. § 1231(a)(1)(A)). Once that "removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Id.* at 578–79 (quoting 8 U.S.C. § 1231(a)(6)). However, "Section 1231(a)(6) does not expressly specify how long detention past the 90-day removal period may continue for those who fall within the four designated statutory categories." *Id.* at 579. And, "indefinite detention" raises "serious constitutional concerns." *Zadvydas*, 533

U.S. at 682. Thus, the Supreme Court has "construe[d] the statute to contain an implicit 'reasonable time' limitation" of six months, "the application of which is subject to federal-court review." *Id.* "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Id.* at 701. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* However, 'once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Thus, in order to state a *Zadvydas* claim, Petitioner "not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). If Petitioner provides such evidence, the burden shifts to the Government to provide evidence sufficient to rebut that showing. *Id.* (quoting *Zadvydas*, 533 U.S. at 701).

As of the filing of this Petition, Petitioner has been in immigration custody since May 2026 (over six months prior to the November 4, 2026 filing of the Petition), which is beyond the presumptively reasonable period contemplated by *Zadvydas.* Thus, the Court must consider whether Petitioner has shown that removal is unlikely within the reasonably foreseeable future.

On November 15, 2017, an IJ ordered Petitioner removed from the United States to Cuba. However, Cuba is not accepting repatriation of Cuban nationals from the United States as it "'has historically refused to accept back its removable nationals.'" *See*

*Martinez v. Parra*, No. 1:26-cv-24255-BB (S.D. Fla. Aug. 11, 2026) (DE 10 at 9) (quoting White House, Presidential Actions, *Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats*, June 4, 2025, https://www.whitehouse.gov/presidentialactions/2025/06/restricting-the-entry-of-foreign-nationals-to-protect-the-united-states-from-foreign-terrorists-and-other-national-security-and-public-safety-threats/ (last accessed Aug. 4, 2026)). Here, the Parties do not dispute that Petitioner's removal to Cuba is not likely in the reasonably foreseeable future.

Respondents have presented Petitioner with a Notices of Removal indicating their intent to remove him to Mexico. However, "nowhere on the record is there a concrete removal plan, evidence of communications with Mexico or efforts to obtain travel documents, evidence that Mexico has agreed to accept Petitioner, or even an articulation of ongoing steps toward effectuating removal." *Id.* Further, "there is evidence that Mexico's acceptance of a Cuban national may be contingent upon the individual's agreement to go there," and, Petitioner has not agreed to being removed to Mexico. *See Id.* (citing *Sanchez v. Bondi*, No. C25-2573-KKE, 2026 WL 160882, at 3–4 (W.D. Wash. Jan. 21, 2026) (noting that Mexico's conditional acceptance casted doubt on Respondent's ability to remove the petitioner). Accordingly, Petitioner has demonstrated that his removal is not likely in the reasonably foreseeable future, so the burden now shifts to the Government to rebut that showing. Respondents have not done so here. Respondents provide no evidence that they have an actual plan of removal, much less that any coordination with Cuba or Mexico has taken place. Instead, Respondents suggest that once the stay is lifted in this case, Petitioner's removal will be effectuated. *See generally* (DE 7 at 7.)

Further, the Court finds that Petitioner has not thwarted removal efforts by refusing to sign ICE's notice of intent to remove him to Mexico. Generally, where a petitioner "'acts to prevent [his] removal'" by "challeng[ing] issues related to his removal order and his post-removal period detention," the 180-day removal period may be tolled. *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)); *see also Guo Xing Song v. U.S. Att'y Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("The six-month period is tolled, however, if the alien acts to prevent his removal."). But where, as here, a petitioner demonstrates that his removal is not reasonably foreseeable because there is no evidence that the receiving countries will to accept him, tolling of the removal period is unwarranted. *Zadvydas*, 533 U.S. at 701.

The Court finds Petitioner's refusal to be removed to Mexico absent an agreement with the United States or other supporting evidence establishing that Mexico is willing to accept him, is not tantamount to non-cooperation. "Here, too, there is no evidence of previous communications with Mexico or a plan for removal to Mexico. Respondents do not even argue that 'necessary travel documents have been sought—let alone obtained—for any country." *Martinez*, No. 1:26-cv-24255-BB (S.D. Fla. Aug. 11, 2026) (DE 10 at 11) (quoting *Torres v. Warden, Fla. Soft Side S. Det. Facility*, No. 2:26-cv-1141-JES-NPM, 2026 WL 1993262, at *2 (M.D. Fla. July 10, 2026)). Respondents have not identified how the actions taken by Petitioner actually impeded a legitimate effort to secure travel documents or an agreement with Mexico to accept Petitioner. "The crux of the 'thwarting removal' analysis is whether the 'keys' to Petitioner's freedom are in his pocket—whether ICE would likely be able to effectuate his removal if Petitioner would simply cooperate." *Massip Varela v. Warden, Fla. Soft-Sided Facility*, No. 2:26-cv-01700-SPC-KRH, 2026

WL 1596220, at *2 (M.D. Fla. June 4, 2026)) (DE 10 at 12) (quoting *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (citation omitted)). Here, there is no evidence to support a finding that Petitioner holds the keys to some legitimate removal effort that he interfered with. *Id.* Ultimately, Respondents have not demonstrated or otherwise provided objective evidence that Mexico has agreed to accept Petitioner or that it will likely do so soon. Accordingly, the Court finds Petitioner is entitled to release under *Zadvydas*. If, however, removal becomes likely in the reasonably foreseeable future, ICE can detain Petitioner to "assur[e] [his] presence at the moment of removal." *Zadvydas*, 533 U.S. at 580.

## IV. CONCLUSION

Accordingly, after review of the Petition, the Response, pertinent portions of the record, and applicable authorities, it is

**ORDERED** and **ADJUDGED** as follows:

1. The Petition (DE 1) is **GRANTED**.
2. Respondent shall **IMMEDIATELY** release Petitioner from custody on conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3).
3. Respondent shall file a notice with the Court within 48 hours confirming and detailing their compliance with this Order.
4. All pending motions not otherwise ruled upon are **DENIED as moot.**
5. The Clerk of Court **shall** **CLOSE** this case.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 13th day of November, 2026.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**

**Hoffman Gonzalez Rodriguez, *Pro Se***
Alien # 075865269
Krome North Service Processing Center
Inmate Mail/Parcels
18201 SW 12th Street
Miami, FL 33194

**Carolina Perez Schmerold, AUSA**
U.S. Attorney's Office
99 N.E. 4th Street
Miami, FL 33132
Email: carolina.perez@usdoj.gov